[Cite as *State v. Helfrich*, 2019-Ohio-1785.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 18-CA-45 |
| JAMES C. HELFRICH | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:         Criminal appeal from the Licking County
                                 Municipal Court, Case No. 18-CRB-00051

JUDGMENT:                        Affirmed

DATE OF JUDGMENT ENTRY:          May 8, 2019

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

TRICIA MOORE                            JAMES C. HELFRICH PRO SE
40 West Main Street, 4th Floor          P.O. Box 921
Newark, OH 43055                        Pataskala, OH 43062

*Gwin, P.J.*

{¶1} Appellant James S. Helfrich ["Helfrich"] appeals his conviction and sentence after a jury trial in the Licking County Municipal Court.

*Facts and Procedural History*

{¶2} Brandon Kaiser, Jovid Kimple and Douglas Smith rented property from Helfrich in October 1, 2017. The parties signed a lease and rental agreement. The property was described as a house with a detached garage. The tenants were given access to the lower level of the detached garage for their use. The written lease stated that pets were not permitted without the written consent of Helfrich.

{¶3} Kaiser's sister, Brittany Johnson, came to stay with him through the holidays and brought her dog "Kaiser" to the residence. Mr. Kaiser obtained a second dog "Frank" around this time. It was initially intended that Brittany would take Frank with her when she returned to her residence; however, she did not and Mr. Kaiser kept Frank.

{¶4} In December of 2017, Brandon brought the dogs inside the residence to eat due to it being cold. Helfrich came to the residence, observed the dogs in the home, and became angry. Brandon explained that they were his sister's dogs and they were there because of her visiting. Brandon testified that Helfrich advised him that the dogs were to remain in the garage when they were on the property.

{¶5} On December 27, 2017, at around 5:19 PM Kaiser filmed Helfrich as he drove onto the property. The video then shows Helfrich come around the garage, look inside the side door of the garage. At this point, the two dogs run out of the garage, away from the camera, and run off to the left. The dogs are never seen again on the video. Helfrich walks away to the right back to where his truck is parked. A few moments later,

you see his pick-up truck drive off the property. Mr. Kaiser went outside and called for the dogs. Kaiser returned to him and Frank did not return. Kaiser called the City of Pataskala Police Department. After calling the police, Brandon posted on various websites in search of his dog including Nextdoor, Facebook, Paw Scouts, and Pet FBI.

{¶6} Officer Anthony Wisniewski of the Pataskala Police Department testified that he dispatched to the residence of Brandon Kaiser on December 27, 2017. He observed and recorded at the scene fresh boot prints walking around the back of the garage with dog prints walking parallel with those tracks. At the tire marks where the truck was parked, both the boot prints and the dog prints disappeared. After conducting his investigation at Brandon's residence, Officer Wisniewski went to Helfrich's home. There he observed a truck parked at the residence. He observed that there were no paw prints around the truck. Officer Wisniewski testified that he spoke with Helfrich who initially denied being near the garage.

{¶7} James Kasten testified that he works in New Albany and was leaving work at approximately 5:30 PM on December 27, 2017. A few minutes later, he approached the intersection at Smithmill and he noticed a small animal run out from the left. He observed the dog attempting to run up to vehicles driving in the intersection. Kasten stopped and opened the door to his vehicle and yelled for the dog, who without hesitation, jumped right into his vehicle. Kasten observed the dog did not have a collar or tag. He pulled off the road, found a vet close by, and made the phone call at 5:40 PM. Kasten left the dog with the staff at Willow Tree Vet Hospital. When Kasten returned home, he posted an ad on Craigslist and Pet FBI. This ad was observed by Officer Wisniewski, the investigating officer who informed Kaiser. The next day, Brandon

went to Willow Tree Vet Hospital and found Frank.  The veterinary hospital was more than ten miles away from his residence.  Brandon testified that while the dogs were at the residence he was in charge of their care.  At no point did he give the defendant permission to take the dog.

{¶8}   Once the dog was found, based on the time he was located in New Albany and the time the dog was last observed at the residence, Officer Wisniewski decided to drive from the property to the intersection where the dog was located.  He observed that it took him approximately 14 minutes.  He also observed that the terrain was farmland with fences, ravines, and interstate with fences down both sides.

{¶9}   On January 5, 2018, a summons was issued by U.S. Certified Mail to Helfrich charging him with one count of theft under R.C. 2913.02, a misdemeanor of the first degree and one count of criminal trespass under R.0 2911.21(A)(2), a misdemeanor of the fourth degree.  Helfrich signed for the summons on January 9, 2018.

{¶10} Helfrich was arraigned and entered a not guilty plea on January 19, 2018.  A hearing was held in the trial court on February 20, 2018 during which Helfrich informed the court that he intended to proceed pro se.

{¶11} The trial proceeded on May 16 and concluded on May 17, 2018.Helfrich represented himself and testified at trial.  The jury found Helfrich guilty of theft and not guilty of criminal trespass.

{¶12} On May 25, 2018, the Court sentenced Helfrich for the charge of theft.  The court sentenced him to serve One Hundred Eighty days with One Hundred Twenty days suspended, fined him $250, imposed a protective order, and placed him on probation for a period of one year.  However, in a subsequent judgment entry on June 12, 2018, the

court said it was 180 days in jail and 160 days suspended. Helfrich filed a motion to stay execution of his sentence and asked for clarification of the sentence. On June 12, 2018, the Court granted Helfrich's motion to stay and denied his motion to clarify as moot.

*Assignments of Error*

{¶13} Helfrich raises fourteen assignments of error,

{¶14} "I. APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL.

{¶15} "II. THE COURT ERRED IN ALLOWING THIRD PARTIES TO TESTIFY ABOUT THE OWNERSHIP OF THE DOG IN QUESTION AND THE STATE DID NOT SHOW A LACK OF PERMISSION TO HAVE CONTROL OF THE DOG.

{¶16} "III. THE STATE VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO REMAIN SILENT WHEN IT ALLOWED THE PROSECUTOR TO POINT OUT THAT APPELLANT REFUSED TO ANSWER QUESTIONS.

{¶17} "IV. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO CROSS-EXAMINE THE APPELLANT USING THE APPELLATE COURT OPINION FROM THE CASE WHERE HE WAS NAMED A VEXATIOUS LITIGATOR.

{¶18} "V. APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED AS IT WAS FOUND OUT THAT THE JURORS COULD NOT SEE THE VIDEOS BEING PLAYED DURING THE TRIAL.

{¶19} "VI. THE TRIAL COURT ERRED IN NOT REMOVING JURORS WHO REPEATEDLY FELL ASLEEP AND DISRUPTED THE TRIAL PROCEEDINGS.

{¶20} "VII. THE TRIAL COURT ERRED IN NOT RECUSING HIMSELF AND/OR REPLACING A PREJUDICED STAFF MEMBER.

{¶21} "VIII. THE TRIAL COURT ERRED IN CENSORING AND EDITING THE RAW VERDICT FORMS, WHICH PREVENTED APPELLANT FROM INVESTIGATING ERRORS MADE BY THE COURT AND ITS STAFF.

{¶22} "IX. THE TRIAL COURT ALLOWED PLAIN ERRORS OR DEFECTS WHICH SUBSTANTIALLY AFFECTED THE RIGHTS OF THE APPELLANT.

{¶23} "X. THE TRIAL COURT ERRED BY ALLOWING THE STATE TO PRESENT VIDEOS AND PICTURES TO THE JURY DURING DELIBERATION THAT WERE NOT AUTHENTICATED OR ADMITTED INTO EVIDENCE.

{¶24} "XI. THE CUMULUTIVE [sic.] EFFECT OF ALL OF THE ERRORS AT TRIAL DEPRIVED JIM HELFRICH OF A FAIR TRIAL AND HAS CRIPLED [sic.] HIM WITH A CRIME OF DISHONESTY FOR THE REST OF HIS LIFE.

{¶25} "XII. THE GUILTY VERDICT OF THEFT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶26} "XIII. THE SENTENCE OF APPELLANT WAS UNREASONABLY HARSH FOR A FIRST TIME OFFENDER.

{¶27} "XIV. THE TRIAL COURT ERRED WHEN ALLOCATING COURT COSTS."

*Pro se Litigants*

{¶28} We understand that Helfrich has filed this appeal pro se. Nevertheless, "like members of the bar, pro se litigants are required to comply with rules of practice and procedure." *Hardy v. Belmont Correctional Inst.,* 10th Dist. No. 06AP-116, 2006-Ohio-3316, ¶ 9. *See, also, State v. Hall,* 11th Dist. No. 2007-T-0022, 2008-Ohio-2128, ¶11. We also understand that "an appellate court will ordinarily indulge a pro se litigant where

there is some semblance of compliance with the appellate rules." *State v. Richard,* 8th Dist. No. 86154, 2005-Ohio-6494, ¶4 (internal quotation omitted).

{¶29} In *State v. Hooks*, 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528(2001), the Supreme Court noted, "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. See, *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500(1978)." It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty,* 4th Dist. No. 411, 1980 WL 350992 (Feb. 28, 1980), citing *Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 59, 201 N.E.2d 227(1963). New material and factual assertions contained in any brief in this court may not be considered. See, *North v. Beightler,* 112 Ohio St.3d 122, 2006-Ohio-6515, 858 N.E.2d 386, ¶7, quoting *Dzina v. Celebrezze,* 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶16. Therefore, we have disregarded facts and documents in his brief that are outside of the record.

{¶30} In the interests of justice, we shall attempt to consider Helfrich's assignments of error.

I.

{¶31} In his First Assignment of Error, Helfrich argues that the trial court violated his right to a speedy trial.

**STANDARD OF APPELLATE REVIEW.**

{¶32} Speedy trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through

the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978). "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589 (1980), syllabus.

{¶**33**} Our review of a trial court's decision regarding a motion to dismiss based upon a violation of the speedy trial provisions involves a mixed question of law and fact. *State v. Larkin,* 5th Dist. No.2004–CA–103, 2005-Ohio-3122, 2005 WL 1463255, ¶11. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. *State v. Taylor*, 5th Dist. Richland No. 16 CA 17, 2016-Ohio-5912, 2016 WL 5118653, ¶ 43, *citing Larkin, supra*. With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. Id.

{¶**34**} When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, 2010 WL 2060900, ¶ 12.

**ISSUE FOR APPEAL.**

A. Whether the trial court permissibly extended the trial date beyond the R.C. 2945.71 time prescriptions.

{¶**35**} The most serious offense Helfrich was charged with was a misdemeanor of the first degree. A person charged with a first-degree misdemeanor must be brought to trial within 90 days unless the right to a speedy trial is waived. R.C. 2945.71(B)(2).

Helfrich did not waive time. Pursuant to R.C. 2945.73, a person who is not brought to trial within the proscribed time periods found in R.C. 2945.71 and R.C. 2945.72 "shall be discharged" and further criminal proceedings based on the same conduct are barred.

{¶36} A defendant establishes a prima facie case for discharge once he demonstrates that he has not been brought for trial within the time limits set forth in R.C. 2945.71. *State v. Ashbrook*, 5th Dist. Licking No. 06 CA 158, 2007-Ohio-4635, 2007 WL 2582869, ¶ 49, *citing State v. Butcher*, 27 Ohio St.3d 28, 30–31, 500 N.E.2d 1368 (1986). When an appellant has established he was tried outside speedy-trial time limits, the burden shifts to the state to show that the time limit was extended under R.C. 2945.72. Id. at ¶31. If the state fails to produce evidence in rebuttal under R.C. 2945.72, then discharge pursuant to R.C. 2945.73(B) is required. Id. "When reviewing a speedy-trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the appellant was properly brought to trial within the time limits set forth in R.C. 2945.71." *State v. Riley*, 162 Ohio App.3d 730, 2005-Ohio-4337, 834 N.E.2d 887, ¶ 19 (12th Dist.).

{¶37} Certain events toll the accumulation of speedy-trial time. R.C. 2945.72 provides for a tolling of the time limitations under certain circumstances,

> The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
>
> (A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by

reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

(F) Any period of delay necessitated by a removal or change of venue pursuant to law;

(G) Any period during which trial is stayed pursuant to an express statutory requirement or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.

**{¶38}** In the case at bar, Helfrich was served with summons by U.S. Certified Mail signed for on January 9, 2018. Therefore, the state had ninety days, or until April 9, 2018 to bring Helfrich to trial. However, by Judgment Entry filed February 22, 2018, the trial court granted the state's motion to continue due to the unavailability of Officer Wisniewski. [Docket Number 41]. By entry filed February 26, 2018, a new trial date was scheduled for April 12, 2018. By Judgment Entry filed April 11, 2018, the trial court granted the state's request to continue the trial date due to a change in the attorney prosecuting Helfrich's case and to allow the state to file a motion in limine "to address the voluminous pre-trial filings of the defendant regarding a determination of the admissibility of some of the defendant's proposed evidence." [Docket Number 100]. By entry filed April 17, 2018, the trial court scheduled trial to commence on May 16, 2018. [Docket Number 109]. Trial began on May 16, 2018. Thus, the speedy trial time calculation is as follows:

| | |
|---|---|
| January 9, 2018 to February 26, 2018 | 46 days |
| February 26, 2018 to April 11, 2018 | Tolled |
| April 11, 2018 to May 16, 2018 | Tolled |

**{¶39}** Pursuant to R.C. 2945.72(H), a court may grant a continuance upon its own initiative as long as it is reasonable. This provision has been interpreted to permit courts to sua sponte continue an accused's trial beyond the time limit prescribed by R.C. 2945.71, but only when reasonable and only when the continuances are made by journal entry prior to the expiration of the time limit. *See State v. Lee*, 48 Ohio St.2d 208, 357 N.E.2d 1095(1976), and *Aurora v. Patrick*, 61 Ohio St.2d 107, 15 O.O.3d 150, 399 N.E.2d

1220(1980).  In the case at bar, the trial court found the continuances reasonable and journalized the continuance prior to the expiration of the time limit.

{¶40} In the case at bar, only forty-six days of the 90-day speedy trial period had expired prior to the start of trial.

{¶41} Helfrich's First Assignment of Error is overruled.

II.

{¶42} In his Second Assignment of Error, Helfrich argues that the state failed to provide testimony from the owner of the dog, "Frank," that Helfrich did not have permission to take the dog.  In his Twelfth Assignment of Error, Helfrich maintains that his conviction for theft is against the manifest weight of the evidence.

**STANDARD OF APPELLATE REVIEW- SUFFICIENCY OF THE EVIDENCE.**

{¶43} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶44} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574

N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus.  *State v. Poutney,* Oh.  Sup. Ct. No. 2016-1255, 2018-Ohio-22, 2018 WL 328882 (Jan. 4, 2018), ¶19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31.  We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'"  *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**ISSUE FOR APPEAL.**

A.    Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, "if believed, would convince the average mind of the defendant's guilt on each element of the crime of theft beyond a reasonable doubt."

{¶45} Helfrich was charged with theft.  R.C. 2913.02 states in relevant part,

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent;

* * *

*See also*, 2T. at 324. "Owner" is defined as,

(D) "Owner" means, unless the context requires a different meaning, any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful.

R.C.2913.01 (D). *See also,* 2T. at 325-326. "Deprive" is defined as,

(C) "Deprive" means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C). *See also*, 2T. at 325.

{¶46} In the case at bar, Helfrich presented the testimony of Shonda Montroy. Montroy testified that she had found the dog identified as Frank hiding under a car at her

residence. (2T. at 56).[1]    No one contacted her for "a couple of weeks." (2T. at 57). Montroy testified that she then received a message from Brandon Kaiser who told her that he and his family rescue dogs and they would care for the dog. (2T. at 57 - 58). Brandon and another came to see the dog; however, Brandon returned alone to pick the dog up from Montroy's residence. (2T. at 59).

{¶47} Helfrich also called as a witness Douglas Smith. Smith testified that he and Kaiser went to see the dog at Montroy's residence. (2T. at 189). Smith testified that Kaiser picked up the dog by himself from the residence. (2T. at 189). The following exchange occurred during direct examination:

> [Helfrich]:    When - - when you guys obtained the dog, Frank, was the intention to give it to the sister if you know, or for Brandon to keep it?
>
> [Smith]:    No. Brandon and I actually had this conversation. Leaving the home we discussed, like, whose dog it would be and he decided that it would be his dog.
>
> [Helfrich]:    What do you mean?
>
> [Smith]:    There was no talk - - I mean there was no talk of this being his sister's dog or anything like that. I mean, his sister was never involved in us getting Frank. His sister lived in another state, and I mean, we got Frank by, like the two of us.

2T. at 189-190. Although Kaiser testified that his plan was to give the dog to his sister, Kaiser decided to keep Frank. (1T. at 57-58). Kaiser testified that he did not give Helfrich permission to take Frank. (1T. at 58).

---

[1] For clarity the references to Helfrich's jury trial will be identified by volume and page number as "T."

{¶48} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Helfrich knowingly with purpose to deprive the owner of property or services, knowingly obtain or exert control over the dog known as Frank without consent of the owner or person authorized to give consent; and, accordingly, there was sufficient evidence to support Helfrich's conviction.

**STANDARD OF APPELLATE REVIEW- MANIFEST WEIGHT OF THE EVIDENCE.**

{¶49} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
> * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting 5 Ohio Jurisprudence 3d, Appellate Review*, Section 60, at 191–192 (1978).

{¶50} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20.  In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe."  *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).  Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶51} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins, supra,* 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983).  Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."  Id.

**ISSUE FOR APPEAL.**

B.  Whether the jury clearly lost their way and created such a manifest miscarriage of justice that Helfrich's conviction for theft must be reversed and a new trial ordered.

**{¶52}** In the case at bar, the jury heard the witnesses, viewed the evidence and heard Helfrich's testimony, arguments and explanations about his and Kaiser's actions. The jury also viewed Kaiser and Helfrich subject to cross-examination.  Thus, a rational basis exists in the record for the jury's decision.

**{¶53}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."  *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996).  Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true.  *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).  Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.  *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus*, superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n. 4, 684 N.E.2d 668 (1997).*

**{¶54}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Helfrich of theft.

**{¶55}** Based upon the foregoing and the entire record in this matter we find Helfrich's conviction for theft is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided that matter. The jury heard the witnesses, evaluated the evidence, and was convinced of Helfrich's guilt of theft.

**{¶56}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of theft for which Helfrich was convicted.

**{¶57}** Helfrich's Second and Twelfth Assignments of Error are overruled.

III.

**{¶58}** In his Third Assignment of Error, Helfrich contends that the jury was arguably allowed to base its verdict of guilty on the perceived basis that his failure to answer questions of Officer Wisniewski and his decision to end his discussion with the police was substantive evidence of his guilt. [Appellant's Brief at 16]. Helfrich agrees that he failed to object at the trial court level. [Appellant's Brief at 16].

**{¶59}** After gathering information from Kaiser, Officer Wisniewski and a second officer went to Helfrich's home to continue the investigation. While at the home, the Officer's body microphone recorded the conversation with Helfrich. Helfrich speaks with Officer Wisniewski for a short period. Helfrich then ends the discussion. The recording

is one of seven videos contained on State's Exhibit One. The Exhibit was entered into evidence without objection. 1T. at 231-232.

{¶60} Officer Wisniewski told Helfrich he was not under arrest. Helfrich points to the following exchange, in which the state inquired of Officer Wisniewski as follows,

Q:      Okay. And what was the next question you asked him?

A:      The next question I asked, because at that point, I mean, I had seen him go to the garage. I had seen him let the - - or let the dogs out, you know what I mean? So the next thing I asked him was, cause at this point it's why would you lie about going in the garage (inaudible). So I said, where's the dog? Like, where's the dog?

Q:      And was it at that point that he ended your conversation?

A:      Yes.

1T. at 125. [Appellant's Brief at 15-16]. It is unclear from the audio if Helfrich told Wisniewski that he wanted to speak to an attorney. At the end of the conversation, Officer Wisniewski told Helfrich that he was going to be charged with theft and criminal mischief. He asked if Helfrich wanted the complaint mailed to him.

{¶61} The right to remain silent is conferred by the United States and the Ohio Constitutions. The privilege against self-incrimination "is fulfilled only when the accused is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" *State v. Graber*, 95 N.E.3d 631, 641 (5th Dist.2003) *quoting Miranda v. Arizona*, 384 U.S. 436, 460, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *quoting Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653(1964). The United States Supreme Court in *Miranda v. Arizona* detailed the well-known procedural safeguards,

including the right to an attorney, to protect the privilege against self-incrimination. "A suspect's right to an attorney during questioning * * * is derivative of his right to remain silent." *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 13 *quoting Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (Rehnquist, J., concurring). In *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that use of a defendant's post-arrest, post-*Miranda* silence for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 16. In *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), the United States Supreme Court held the use of a defendant's post-arrest, post-Miranda silence as substantive evidence of guilt violated due process. The State may not use a defendant's silence to lead the jury to the conclusion that innocent people speak to the police to clear up misunderstandings, while guilty people consult with their attorneys. *State v. Abraham*, 9th Dist. Summit No. 26258, 2012-Ohio-4248, 2012 WL 4100406, ¶ 42 *citing State v. Leach* at ¶ 32.

{¶62} In *State v. Abraham*, 9th Dist. Summit No. 26258, 2012-Ohio-4248, the Ninth District Court of Appeals affirmed a decision to find no *Doyle* violation in a scenario where a defendant's pre-arrest, pre-*Miranda* silence was referred to in the state's case-in-chief. The detective in *Abraham* testified that during questioning, the defendant stated he did not know if he needed to talk to an attorney or he may want to talk to an attorney. Id. at ¶ 43. The state stopped the line of questioning and no more references were made regarding the defendant's attorney.

{¶63} The Ninth District found the testimony in *Abraham* to be distinct from *Leach* because the State in Abraham never affirmatively sought to use the defendant's silence as evidence. *Abraham*, ¶45. The detective's reference was "brief and isolated," the reference was vague, and there was no evidence the State sought to elicit the response the detective gave. Id. *citing State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 162.

{¶64} In this case, we find Helfrich's silence was pre-arrest and pre-*Miranda.* We further find the statement was vague in that the officer simply stated Helfrich ended the interview. In *Leach*, the defendant stated, "He wished to consult an attorney." *Leach*, ¶ 16. Second, Officer Wisniewski's statement was brief and isolated. There was no further reference during the state's case-in-chief about Helfrich ending the interview.

{¶65} Further, there is no evidence the state affirmatively sought to use Helfrich's silence as substantive evidence of his guilt; nor did the state use the evidence for impeachment purposes. The Ninth District stated, "[t]he thrust of *Leach* and its progeny is that the State may not use a defendant's unwillingness to talk to the police to infer his guilt." *Abraham,* ¶ 45 *citing Powell*, ¶¶ 155-156. Officer Wisniewski made no comment on Helfrich's decision to end the interview.

{¶66} In this case, we find no abuse of discretion when the trial court did not find the state elicited a *Doyle* violation necessitating a mistrial. A mistrial is required where the ends of justice so require and a fair trial is no longer possible. Officer Wisniewski's reference to Helfrich ending the interview did not rise to that level.

{¶67} Helfrich's Third Assignment of Error is overruled.

IV.

**{¶68}** In his Fourth Assignment of Error, Helfrich argues that the trial court improperly permitted the state to cross-examine Helfrich with evidence that he had been found to be a vexatious litigator.

**STANDARD OF APPELLATE REVIEW - ADMISSIBILITY OF EVIDENCE.**

**{¶69}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967). However, we review de novo evidentiary rulings that implicate the Confrontation Clause. *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶97.

**ISSUE FOR APPEAL**

A. Whether the trial court abused its discretion by admitting evidence of Helfrich's being named a "vexatious litigator."

**{¶70}** During cross-examination, and over the objections of the Helfrich, the state attempted to question Helfrich as having been found to be a vexatious litigator. 2T. at 258-262. The state cross-examined Helfrich with a 2012 Opinion of this Court affirming the trial court's decision finding him to be a vexatious litigator in an unrelated civil case. *Helfrich v. Madison,* 5th Dist. Licking No. 11 CA 26, 2012-Ohio-551. Initially, the Judge sustained the objection however, he then allowed the prosecutor to question him:

Q.    Thank you.  Now you're no stranger to the courtroom are you, Mr. Helfrich?

A.    I'm a stranger to his type of thing but no stranger the courtroom, correct.

Q.    Right. And in fact you have engaged in litigation quite often, wouldn't you agree with that?

A.    Your Honor, objection to relevance of any line of questioning of this.  It's really - - it's not relevant to whether I stole a dog or trespassed.

THE COURT.    Well I'm going to reserve the ruling on your objection, just like I gave you some leeway to find out where things were going, I'm going to give her a little bit of leeway and if it's improper, I'll sustain your objection and instruct the jury to disregard it but let's see where it goes.

A.    Okay.

THE COURT.    Mrs. Moore, you may continue.

Q.    In fact, your creditability was called into question during litigation by the Court of Appeals, correct?

A.    Objection, Your Honor.

THE COURT.    I'll sustain the objection.  Move on.  Jury will disregard the last question.

Q.    Isn't it true that you have been found *to engage in retaliatory tactics* against people that you get upset with?

A.    Your Honor, I object.

THE COURT.          Overrule it.  It goes toward credibility.

A.          I can't recall.  There was a - there was a case, I believe it was in front of Judge Marcelain, that he found that I had improperly filed a complaint and I don't remember who it was about, but yeah, there was some - - some out of, I don't know, I bet you don't have that good of track record.  That was something –

Q.          Excuse me, Your Honor.  I'd ask for (inaudible) to strike this -

A.          Okay.  There was some - - yes, there was - -

THE COURT.          The jury will disregard the witness's comment about Mrs. Moore's alleged track record.

A.          So yeah there was, I think there was a judge that said something about it.  I filed a lawsuit improperly.  That's all I remember about it.

Q.          In fact, you were deemed a vexatious litigator by the Court of Appeals based on your filings.  Isn't that correct?

A.          No that's not correct?

Q.          No?  *So if I have a case in front of me, James Helfrich v. Timothy Madden, where the court deems you to be a vexatious litigator engaging in retaliatory tactics - -*

A.          Okay.

Q.          *And intimidation of defendants*, that that is not true?

A.          Your Honor, can I raise my objection again?  This had no relevance to what I'm here for today.  I didn't file - -

THE COURT.          It goes toward creditability, bias, and motive to lie.  The objection will be overruled.

A.          Yes.  There was a - - there was a case on vexatious litigation.

Q.          Yes.  And you were deemed to be one, correct?

A.          Yes.

Q.          Vexatious litigator and you were found *to retaliate against present defendants for their defense of the Strickland cases and to discourage their continued defense of the Strickland Common Pleas by intimidation?*

A.          Well there wasn't — yes there was.

Q.          Okay.  And, in fact, that case remains in place, the finding that you're a vexatious litigator and you have to file a special way different from everybody else, isn't that correct?

A.          That's correct.  That's correct.

Q.          To make sure that your claims are valid?

Q.          So it's not just something out of Marcelain's courtroom.  This was kind of a big deal, would you agree?

A.          Well (inaudible) had them thrown out a couple times before he got it through, but yeah, go ahead.

Q.          But it remains in place, correct?

A.          Well you get tired after awhile.  Yeah, sure.

Q.          Huh.

A.          There's a chance you might win this too but -

Q.     Objection, Your Honor.

THE COURT.          Sustained.  Jury will disregard.

Q.     *And why I bring that up is that kind of goes to your behavior in*
*this case, correct?*

A.     How does it go to my behavior in this case?

Q.     *Well let's talk about that.*

2 T. at 258-262.  The prosecutor then claimed Appellant, by proceeding and obtaining an
eviction through the Court was retaliating against his tenants.  2T. at 262-266.

{¶71} The state repeated that Helfrich had been designated a vexatious litigator
as a part of her closing arguments, claiming that he had been named a vexatious litigator
due to retaliatory conduct and intimidation of witnesses and that showed his character in
the present case:

As I stated in opening, you're going to hear a lot of evidence about

things that happened before, about things that happened after, and I

brought up the vexatious litigator information for a reason, because of the

way things happened in this case is consistent with things that Mr. Helfrich

has done in the past, use of retaliation, use of intimidation.  This is no

different.  This fits in with his pattern of conduct that only after he's reported

for being on the property without permission, about going into the garage,

about opening that door, does he file a report for criminal trespass from

five days before.  He then sends them an email saying, you know, because

of your actions, because of the things that have happened on this day, I

filed charges and the only communication we're going to have is through

writing now, retaliatory. The next day after this happens, even though I believe there's a load of evidence that he knew about the dogs before that he knew about the sister being on the property, it wasn't until after they filed charges that he evicted them from the property. That's why I brought up that information about vexatious litigator, cause it's a common mode of operation for Mr. Helfrich, use of retaliatory tactics, and intimidation.

2T. at 296-297.

**{¶72}** The state argues that this evidence was admissible pursuant to Evid.R. 404(A) (1) as a pertinent trait of character offered to rebut Helfrich's testimony concerning his good character[2]. [State's brief at 18-19].

**{¶73}** R.C. 2323.52 defines a "vexatious litigator" as,

(3) "Vexatious litigator" means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. "Vexatious litigator" does not include a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio unless that person is representing or has represented self pro se in

---

[2] The state makes no argument in the brief filed in this Court that the evidence was admissible for impeachment purposes.

the civil action or actions. For the purposes of division (A)(3) of this section, "civil action" includes a proceeding under section 2743.75 of the Revised Code.

**{¶74}** "Vexatious conduct" is defined as follows,

(2) "Vexatious conduct" means conduct of a party in a civil action that satisfies any of the following:

(a) The conduct obviously serves merely to harass or maliciously injure another party to the civil action.

(b) The conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.

(c) The conduct is imposed solely for delay.

R.C. 2323.52(A)(2).

**{¶75}** "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975).

**{¶76}** The state does not cite anywhere in our Opinion in the previous case that we found Helfrich engaged in retaliatory actions or intimidation of witnesses. Our Opinion notes,

In the case at bar, after hearing days of testimony on the vexatious litigator counterclaim, the trial court found by "clear and convincing evidence that Mr. Helfrich has 'habitually, persistently, and without

reasonable grounds engaged in vexatious conduct' in multiple civil actions." See Judgment Entry, March 4, 2011, at page 19. In reaching this conclusion, the trial court thoroughly reviewed Appellant's history of filing complaints, motions, and affidavits for disqualification in that Court, in addition to Appellant's conduct in connection with said cases. The trial court found that Appellant's "conduct 'obviously serves merely to harass or maliciously injure another party' and/or 'is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law; and/or the described conduct was "imposed solely for delay'." Id. at 18–19, 882 N.E.2d 61.

Based on our review of the record and Appellant's numerous lawsuit and copious filings, we conclude that the trial court did not err in finding in favor of Appellees on their vexatious litigator counterclaim. Upon review of the record, we find overwhelming evidence that Appellant habitually files unnecessary, inappropriate, or supernumerary pleadings and motions. Further, the record shows that Appellant insists on raising and re-raising arguments which have been rejected by the trial court, and this Court, sometimes repeatedly.

While this Court is sympathetic to a party who feels he has suffered an injustice, and takes all measures *within* the law to correct such, we find that Appellant's actions have long passed this stage. His conduct in the various matters before the Licking County Common Pleas Court are "vexatious," within the meaning of the statute, in that "[t]he conduct is not

warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law." R.C. § 2323.52(A)(2)(b). His conduct is also "vexatious" insofar as some of it "is imposed solely for delay." As such, the trial court properly declared him a vexatious litigator.

*Helfrich v. Madison,* 5th Dist. Licking No. 11 CA 26, 2012-Ohio-551, ¶61-¶63.

**{¶77}** Helfrich was not found to be a vexatious litigator because he used retaliation and intimidation against individuals with whom he disagreed. Therefore, the evidence did not have any tendency to show motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake. Evid.R. 404(B). Nor can the evidence be said to have any tendency to show bias, prejudice, interest, or any motive to misrepresent. Evid.R. 616(A).

**{¶78}** We find the state's questioning and use of the vexatious litigator evidence to have been improper insofar as Helfrich was not found to be a vexatious litigator because he used retaliation and intimidation against individuals with whom he disagreed. The state further improperly used this evidence to argue that Helfrich's actions in this case were in conformity with his past actions in contravention of Evid.R. 404(B).

**{¶79}** Despite finding that the trial court erroneously admitted the other-acts evidence in the case at bar, we must determine if the error was harmless. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *See also State v. McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶88 (applying non-constitutional harmless-error analysis to erroneous admission of other acts evidence). To find an error harmless, an appellate

court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976).

{¶80} In *State v. Rahman,* the Ohio Supreme Court recognized,

> We are also mindful that our role upon review of this case is not to sit as the supreme trier of fact, but rather to assess the impact of this erroneously admitted testimony on the jury. In writing about the court's function on federal appellate review, Justice John Paul Stevens' observation is particularly appropriate:
>
> "'[I]t is not the appellate court's function to determine guilt or innocence * * *. Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out * * *. [T]he question is, not were [the jury] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.'" *United States v. Hasting* (1983), 461 U.S. 499, 516, 103 S.Ct. 1974, 1984, 76 L.Ed.2d 96, Stevens, J. concurring (*quoting Kotteakos v. United States* [1946], 328 U.S. 750, 763-764, 66 S.Ct. 1239, 1247-1248, 90 L.Ed. 1557).

*State v. Rahman,* 23 Ohio St.3d 146, n. 4, 492 N.E.2d 401. This standard of review has been applied by the Ohio Supreme Court,

> Thus, under Section 2945.83 of the Revised Code it would seem that since there is substantial evidence to support the guilty verdict even after

the tainted evidence is cast aside, we should affirm. However, under *Fahy v. State of Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), and *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (decided February 20, 1967), we are refused that course of action. In *Fahy*, the court said that when constitutionally inadmissible evidence has been admitted, a reversal is required where 'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' (Emphasis added.) *In Chapman,* the court made it clear that the *Fahy* rule applied to federal constitutional errors in spite of a state harmless-error statute to the contrary.

*State v. Cowans*, 10 Ohio St.2d 97,104-105, 227 N.E.2d 201(1967).

{¶81} In the case at bar, we find beyond a reasonable doubt, that evidence of Helfrich's vexatious litigator status did not contribute to his conviction. As noted in our disposition of Helfrich's Second and Twelfth Assignments of Error sufficient evidence was presented to support each element of the crime of theft. The jury was able to personally observe Helfrich, Kaiser and Officer Wisniewski subject to cross-examination. The jury was able to view real-time videos of the events.

{¶82} Based upon the entire record before us, we conclude that any error in the admission of the vexatious litigator evidence was harmless beyond a reasonable doubt.

{¶83} Helfrich's Fourth Assignment of Error is overruled.

V.

{¶84} In his Fifth Assignment of Error, Helfrich contends that the jury could not view the video evidence that was presented during the trial.

{¶85} In the case at bar, during deliberations the jury asked the trial court to allow the jury to see the video evidence again. 2T. at 335. The jurors were brought back into the courtroom. The juror viewed the video taken by Kaiser of Helfrich near the garage area two times. 2T. at 337-340. The trial court then had the bailiff take the video and a laptop computer to the jury room to allow the jurors to watch the video in the jury room. 2T. at 340. When asked if he had any objection to how the court handled the situation, Helfrich responded, "No, sir." 2T. at 341.

{¶86} Under the doctrine of "invited error," it is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor*, 71 Ohio St. 3d 660, 663, 646 N.E. 2d 1115(1995), *citing State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359, 626 N.E.2d 950(1994*). See, also, Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145(1943), paragraph one of the syllabus. As the Supreme Court of Ohio has stated:

> "The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible."

*Lester* at 92-93, 50 N.E.2d 145, *quoting State v. Kollar*, 142 Ohio St. 89, 91, 49 N.E.2d 952(1915).

{¶87} Having failed to object when given the opportunity, Helfrich has waived all but plain error in the jurors viewing of the video evidence.

{¶88} The Ohio Supreme Court has recently clarified the standard of review for plain error:

> Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court.  However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

> Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial."  Id.  We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice – the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.)  Id.  At ¶ 22, *citing United States v. Dominguez Benitez,* 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 94 Ohio St.3d 21, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, *reconsideration denied,* 151 Ohio St.3d 1445, 2017-Ohio-8730, 87 N.E.3d 215.

**{¶89}** In the case at bar, we find no plain error because the jury was able to watch the video in the courtroom and in the jury room. As stated previously, "plain error" exists only when it is clear the verdict would have been otherwise but for the error. *State v. Knauff,* 4th Dist. Adams No. 10CA900, 2011-Ohio-2725, ¶ 44, *appeal not allowed*, 129 Ohio St.3d 1507, 2011-Ohio-5358, 955 N.E.2d 388. Moreover, Helfrich has not demonstrated a reasonable probability the alleged error affected the outcome of the trial. *State v. Garrison*, 5th Dist. Muskingum No. CT2017-0034, 2018-Ohio-1048, ¶ 18.

**{¶90}** Helfrich's Fifth Assignment of Error is overruled.

VI.

**{¶91}** In his Sixth Assignment of Error, Helfrich claims that the court violated his due process rights by allowing a juror to remain on the panel who admittedly was sleepy for a period and a juror who had a coughing fit during closing arguments.

**{¶92}** On the second day of trial, the trial court noticed that Juror No. 3 was appearing to nod off. 2T. at 143. The trial court questioned Juror No. 3 and inquired if

she felt she could continue or she felt that she would like to be replaced. 2T. at 145. The juror promised to tell the judge if she felt she could no longer pay attention to the testimony. 2T. at 145. Later in the day, it was brought to the judge's attention that Juror No. 7 was starting to nod off. 2T. at 206-207. The trial judge told counsel that he would keep an eye on all the jurors to insure no one was sleeping. 2T. at 207. The trial court interrupted Helfrich's closing argument to allow a juror to take a break in order to control her coughing.

**STANDARD OF APPELLATE REVIEW.**

{¶93} It is well settled that the trial court is in the best position to discern the nature of alleged juror misconduct and to fashion the proper remedy for any demonstrated misconduct. *State v. McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046, ¶184. Further, the trial court has "'considerable discretion in deciding how to handle a sleeping juror.'" Id., *quoting State v. Sanders*, 92 Ohio St.3d 245, 253 (2001). We will not disturb a trial court's handling of a sleeping juror absent an abuse of that discretion. *See State v. Suarez*, 11th Dist. Geauga No. 2013–G–3167, 2014–Ohio–1350, ¶ 31.

**ISSUES FOR APPEAL**

A. Whether the trial court abused its discretion by not removing Juror No. 3 or Juror No. 7.

{¶94} Where the misconduct involves a juror falling asleep during the trial, a showing of prejudice typically requires some indication on the record that the juror missed a large or critical portion of the testimony. *See State v. McKnight*, 107 Ohio St.3d 101, 837 N.E.2d 315, 2005-Ohio-6046, at ¶ 186-187; *State v. Sanders*, 92 Ohio St.3d 245, 253, 750 N.E.2d 90(2001). "A trial court 'has considerable discretion in deciding how to

handle a sleeping juror.'" *Sanders, supra* at 253, 750 N.E.2d 90, *quoting United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000).

**{¶95}** It is apparent from the trial judge's comments that the juror did not fall asleep repeatedly or for an extended period, but only nodded off at one point during the trial. Thus, the juror did not miss any large portion of the trial, and without some indication as to when during the trial the juror fell asleep, it is unclear whether any portions that the juror might have missed were critical portions. *See Sanders, supra* at 253, 750 N.E.2d 90; *McKnight, supra* at ¶ 186-7, 837 N.E.2d 315.

**{¶96}** In *Sanders*, an attorney noted during an on-the-record sidebar that one juror's eyes were closed for an hour and fifteen minutes and the juror was motionless for a half hour. *Sanders, supra* at 252, 750 N.E.2d 90. There were also indications that one juror-although it is not clear whether it was the same juror or a different one-had fallen asleep during another portion of the testimony. Id. at 253, 750 N.E.2d 90. Nevertheless, the Ohio Supreme Court found no plain error in the absence of some indication as to what portions of the testimony the juror missed. Id.

**{¶97}** In the case at bar, only two isolated instances occurred. It does not appear from the record that any sleeping juror missed "large or critical portions" of the proceedings. Therefore, no prejudice results from that jurors remaining on the jury. *Sanders* at 253, 750 N.E.2d 90. "Moreover, the trial judge was watching the situation, and he admonished the jury to be alert. *Compare United States v. McFerren* (Apr. 8, 1998), C.A.6 No. 96–5458, unpublished opinion, 1998 WL 180514 (affirming conviction where judge "kept a watchful eye on the jury" and, when necessary, admonished jurors to stay awake)." *Sanders* at 253, 750 N.E.2d 90.

{¶98}  Helfrich's Sixth Assignment of Error is overruled.

VII.

{¶99}  In his Seventh Assignment of Error, Helfrich argues the trial court erred by not recusing himself.  Helfrich cites to evidence outside the trial court record to argue that he and the trial court's bailiff had heated and contentious relations.

{¶100} Pursuant to R.C. 2701.03, if a judge of a court of common pleas allegedly is biased in a proceeding pending before the court, the proper proceeding for a party to follow to raise this issue is by filing an affidavit of disqualification with the Clerk of the Ohio Supreme Court.  Appellant failed to follow this procedure in the instant case.

{¶101} Since only the Chief Justice or his designee may hear disqualification matters, the trial court was without authority to pass upon disqualification, and we are likewise without authority to void the judgment of the trial court upon that basis.  *See, Beer v. Griffith,* 54 Ohio St.2d 440, 377 N.E.2d 775(1978).

{¶102} Helfrich's Seventh Assignment of Error s overruled.

VIII.

{¶103} In his Eighth Assignment of Error, Helfrich contends the trial court erred in denying his public records request for unredacted jury forms.  The trial court only redacted the names of the jurors from the verdict forms before providing them to Helfrich.

{¶104} Sup.R. 45 was enacted on July 1, 2009, to specifically govern public access to court records.  "Court records are presumed open to public access."  Sup.R. 45(A).  Sup.R. 45 states in pertinent part:

(E) Restricting public access to a case document

(1) Any party to a judicial action or proceeding or other person who is the subject of information in a case document may, by written motion to the court, request that the court restrict public access to the information or, if necessary, the entire document.  Additionally, the court may restrict public access to the information in the case document or, if necessary, the entire document upon its own order.  The court shall give notice of the motion or order to all parties in the case.

* * *

(2) A court shall restrict public access to information in a case document or, if necessary, the entire document, if it finds by clear and convincing evidence that the presumption of allowing public access is outweighed by a higher interest after considering each of the following:

(a) Whether public policy is served by restricting public access;

(b) Whether any state, federal, or common law exempts the document or information from public access;

(c) Whether factors that support restriction of public access exist, including risk of injury to persons, individual privacy rights and interests, proprietary business information, public safety, and fairness of the adjudicatory process.

* * *

{¶105} Sup.R. 47 also provides that a person aggrieved by the decision of a court to restrict access to court records under Sup.R. 45(E) may challenge the decision by

pursuing an original action in mandamus. Sup.R. 47(B). *See, also, State ex rel Brady*, 3d Dist. No. 8–08–10, 2008–Ohio–5958, ¶ 6, *reversed in part on other grounds*, 123 Ohio St.3d 255, 915 N.E.2d 1183, 2009–Ohio–4942. (Mandamus is the appropriate remedy to compel compliance with Ohio's Public Records Act.). *Accord, N.L. v. A.M.,* 6th Dist. Lucas No. L-10-1307, 2010-Ohio-5834, ¶ 8.

{¶106} Thus, while Helfrich may wish to challenge the trial court's decision to restrict access to court records, he cannot do so on direct appeal to this court. Instead, Helfrich must file an original action in mandamus challenging the trial court's restriction of access to court records. Sup.R. 47(B).

{¶107} Helfrich's Eighth Assignment of Error is overruled.

IX.

{¶108} In his Ninth Assignment of Error Helfrich claims, "There is not one shred of evidence that Appellant ever stole a dog, only a trial that is saturated with plain error that the court should have stopped. The prosecutor capitalized on as if it were a card game and not a person's life and reputation, (see all assignments of errors)." Appellant's Brief at 28.

{¶109} We have previously found in our disposition of Helfrich's Second and Twelfth Assignments of Error that his conviction is based upon proof beyond a reasonable doubt of all the elements of theft and is not against the manifest weight of the evidence.

{¶110} "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon,* 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, at ¶14, *quoting State v. Carman,* 8th Dist. Cuyahoga No. 90512, 2008-Ohio-4368, at ¶31. "It is not the function of this court to construct a foundation for [an

appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell,* 9th Dist. Summit No. 24184, 2009-Ohio-1211, at ¶16, *quoting Kremer v. Cox*, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006(9th Dist. 1996). Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Frye v. Holzer Clinic, Inc.,* 4th Dist. Gallia No. 07CA4, 2008-Ohio-2194, at ¶12. See, also, App.R. 16(A)(7); App.R. 12(A)(2); *Albright v. Albright,* 4th Dist. Lawrence No. 06CA35, 2007-Ohio-3709, at ¶16; *Tally v. Patrick,* 11th Dist. Trumbull No. 2008-T-0072, 2009-Ohio-1831, at ¶21-22; *Jarvis v. Stone,* 9th Dist. Summit No. 23904, 2008-Ohio-3313, at ¶23; *State v. Paulsen*, 4th Dist. Hocking Nos. 09CA15, 09CA16, 2010-Ohio-806, ¶6; *State v. Norman*, 5th Dist. Guernsey No. 2010-CA-22, 2011-Ohio-596, ¶29; *State v. Untied*, 5th Dist. Muskingum No. CT20060005, 2007 WL 1122731, ¶141.

{¶111} According to App. R. 12(A) (2), "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)." An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393(1988); *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. Richland No. 2004-CA-0029, 2005 WL 1414486, ¶100; *State v. Miller*, 5th Dist. Ashland No. 04-COA-003, 2004-Ohio-4636, ¶41. "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." *Uncapher v. Baltimore & Ohio Rd. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553, 555(1933).

{¶112} In the case at bar, Helfrich has wholly failed to provide any explanation concerning the legal reasons in support of his Ninth Assignment of Error.  Helfrich has cited no authority in support of his claim.  Helfrich has provided no argument in support of his Ninth Assignment of Error.

{¶113} Helfrich's Ninth Assignment of Error is overruled.

X.

{¶114} In his Tenth Assignment of Error, Helfrich argues the court erred in allowing the jury to review State's Exhibit one.  Helfrich admits he did not object to the admission of State's Exhibit 1 during trial; however, he contends that the DVD contains pictures and videos that were not authenticated or admitted into evidence.

**STANDARD OF REVIEW.**

{¶115} "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *United States v. Marcus,* 560 U.S. 258, 130 S.Ct. 2159, 2164,176 L.Ed.2d 1012 (2010).  (Internal quotation marks and citations omitted).

{¶116} Thus, the defendant bears the burden of demonstrating that a plain error affected his substantial rights and, in addition that the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.  *United States v. Olano* (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; *State v. Perry* (2004), 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646.  Even if the defendant satisfies this burden, an appellate court has

discretion to disregard the error. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240; *State v. Long (*1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus*; Perry,* supra, at 118, 802 N.E.2d at 646.

**ISSUE FOR APPEAL.**

A. Whether the admission of State's Exhibit 1 affected Helfrich's substantial rights and seriously affected the fairness, integrity or public reputation of his trial.

{¶117} State's Exhibit one contains seven videos and several photographs. Officer Wisniewski took the first video. The video depicts animal and tire tracks found near the garage area on the day in question. The pictures are taken from this video. Officer Wisniewski testified and authenticated these during trial. 1T. at 118.

{¶118} The second and third videos on State's Exhibit 1 are identical. They were taken by Kaiser and depict Helfrich at the door of the garage, the dogs coming out from the garage and Helfrich leaving the property. Kaiser testified to this at trial and authenticated the videos.

{¶119} The fourth video was taken by Kaiser and depicts Helfrich driving up and parking at the property. Kaiser testified to this at trial and authenticated the video.

{¶120} The fifth video depicts Officer Wisniewski and Kaiser discussing what had occurred at the residence. Initially, the state indicated that it was not planning to use that video. 1T. at 11. The state did not use the video during its case in chief. Helfrich used and referred to this encounter during his cross-examination of Officer Wisniewski and Kaiser. He further referred to statements made during the encounter during his own testimony and Officer Wisniewski's testimony.

{¶121} The sixth video depicts the interview of Helfrich by Officer Wisniewski. The state did not use this video during its case-in-chief. Helfrich referred to statements made during this interview in his cross-examination of Officer Wisniewski and during his own testimony.

{¶122} The seventh video depicts a telephone call between Helfrich and Officer Wisniewski in which Helfrich claims he received a threat from someone that if he did not return the dog, the premises would be damaged. This video was not authenticated, referred to in the testimony or admitted into evidence.

{¶123} In the case at bar, six of the videos were authenticated and referred to during trial. The photographs were likewise properly admitted into evidence. Helfrich invited any error in the admission of the videos by referring to them during his cross-examination and his own testimony. We find any error in admitting the seventh video was harmless beyond a reasonable doubt because it does not incriminate Helfrich with respect to the charges for which he was on trial. There is no evidence to demonstrate that the jury viewed this video.

{¶124} Under these circumstances, there is nothing in the record to show that the trial court abused its discretion or otherwise committed plain error in allowing the jury to view State's Exhibit one during deliberations.

{¶125} Helfrich's Tenth Assignment of Error is overruled.

XI.

{¶126} In his Eleventh Assignment of Error, Helfrich contends that he was denied a fair trial due to cumulative errors by the trial court.

{¶127} In *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel*, 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶103.

{¶128} Here, Helfrich cites the doctrine of cumulative error, lists or incorporates the previous assignments of error, and gives no analysis or explanation as to why or how the errors have had a prejudicial cumulative effect. Thus, this assignment of error has no substance under *Bethel* and *Sapp*.

{¶129} Further, where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. Stark No.2002CA00125, 2003–Ohio-1313 at ¶37. To the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 89–90, 2004–Ohio–6235, 818 N.E.2d 229, 270 at ¶ 185.

{¶130} As this case does not involve multiple instances of error, Helfrich's Eleventh Assignment of Error is overruled.

XIII.

{¶131} In his Thirteenth Assignment of Error, Helfrich argues sentencing him to a minimum of sixty days in jail is unreasonably harsh[3].

---

[3] The trial court's sentencing entry provides that Helfrich will serve 180 days with 120 suspended. The entry filed June 12, 2018 states that Helfrich was "sentenced to serve 180 days…The sentencing entry provides that 160 days be suspended…." The June12, 2018 Judgment Entry is incorrect concerning the number of jail days suspended in the trial court's original sentencing entry.

**STANDARD OF APPELLATE REVIEW.**

{¶132} Misdemeanor sentences are reviewed for an abuse of discretion. *State v. Thadur,* 5th Dist. Ashland No. 15 COA 018, 2016–Ohio–417, *appeal not allowed*, 145 Ohio St.3d 1473, 2016–Ohio–3028, 49 N.E.3d 1314. In order to find an abuse of discretion, the reviewing court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**ISSUE FOR APPEAL.**

Whether the trial court properly imposed a jail sentence in Helfrich's case.

{¶133} When sentencing for a misdemeanor offense, a trial court is guided by the "overriding purposes of misdemeanor sentencing," which are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.21(A); *State v. Belt,* 5th Dist. Muskingum No. CT2016–0012, 2016–Ohio–8069. "To achieve those purposes, the sentencing court [must] consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." Id. The sentence imposed must be "reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing * * * commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B).

{¶134} With regard to the "overriding purposes" of misdemeanor sentencing, the record before us demonstrates the sentence was designed to punish appellant and, since

appellant had been sanctioned multiple times before, the sentence was necessary to protect the public from future crime. *State v. Ecenbarger*, 5th Dist. Stark No. 2016 CA 00133, 2017–Ohio–165.

{¶135} R.C. 2929.22 governs sentencing on misdemeanors and states that, in determining the appropriate sentence for a misdemeanor, the court shall consider all of the following factors:

(a) The nature and circumstances of the offense or offenses;

(b) Whether the circumstances regarding the offender and the offense or offenses indicate that the offender has a history of persistent criminal activity and that the offender's character and condition reveal a substantial risk that the offender will commit another offense;

(c) Whether the circumstances regarding the offender and the offense indicate that the offender's history, character, and condition reveal a substantial risk that the offender will be a danger to others and that the offender's conduct has been characterized by a pattern of repetitive, compulsive, or aggressive behavior with heedless indifference to the consequences;

(d) Whether the victim's youth, age, disability, or other factor made the victim particularly vulnerable to the offense or made the impact of the offense more serious;

(e) Whether the offender is likely to commit future crimes, in general, in addition to the circumstances described in divisions (B)(1)(b) and (c) of this section;

(f) Whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses;

(g) The offender's military service record.

{¶136} R.C. 2929.22(C) states,

Before imposing a jail term as a sentence for a misdemeanor, a court shall consider the appropriateness of imposing a community control sanction or a combination of community control sanctions under sections 2929.25, 2929.26, 2929.27, and 2929.28 of the Revised Code. A court may impose the longest jail term authorized under section 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime.

{¶137} R.C. 2929.22(B)(2) provides that, when determining the appropriate sentence for a misdemeanor, in addition to considering the factors listed above, "the court may consider any other factors that are relevant to achieving the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code."

{¶138} There is no requirement that a trial court specifically state its reasons on the record in sentencing on misdemeanor offenses. *State v. Belt*, 5th Dist. Muskingum No. CT2016–0012, 2016–Ohio–8069; *State v. Harpster*, 5th Dist. Ashland No. 04COA061, 2005–Ohio–1046. Even where a record is silent, we must presume the trial court

considered the proper factors enumerated in R.C. 2929.22.  *State v. Belt*, 5th Dist. Muskingum No. CT2016–0012, 2016–Ohio–8069; *State v. Kandel*, 5th Dist. Ashland No. 04COA011, 2004–Ohio–6987.

{¶139} In the case at bar, it is evident from the record the trial court was unimpressed with the testimony of Helfrich.  At sentencing, it is evident the trial court took issue with his lack of remorse.  In the instant case, the trial court indicated that the sentence was premised upon Helfrich's lack of remorse, his failure to accept responsibility for his actions, and the fact that he abandoned the dog a distance from home, near a busy roadway in sub-zero temperatures.

{¶140} We find the trial court properly considered the factors of R.C. 2929.22 and did not abuse its discretion in imposing a jail term of 60 days and suspending the balance.

{¶141} Helfrich's Thirteenth Assignment of Error is overruled.

XIV.

{¶142} In his Fourteenth Assignment of Error, Helfrich contends the trial court erred in assessing all the court costs to him even though he was found not guilty of the criminal trespass charge.  Helfrich further argues the state continued the trial twice.  Each time, sixteen people were subpoenaed.  Helfrich contends that he should not be assessed those costs and he should only be responsible for half the costs.

{¶143} R.C. 2947.23(A)(1)(a) governs the imposition of court costs.  It states, in relevant part: "In all criminal cases, * * * the judge * * * shall include in the sentence the costs of prosecution, * * * and render a judgment against the defendant for such costs." The Supreme Court of Ohio has held that R.C. 2947.23 requires a court to assess costs against all convicted defendants, including indigent defendants.  *State v. White*, 103 Ohio

St.3d 580, 2004-Ohio-5989, ¶ 8; *State v. Hayes*, 11th Dist. Ashtabula No. 2004-A-0024, 2005-Ohio-2881, ¶ 8.

{¶144} We find no abuse of discretion in the case at bar.

{¶145} In addition, we note the General Assembly amended R.C. 2947.23 by adding the following provision, "[t]he court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing or at any time thereafter." In *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, the Ohio Supreme Court noted that in light of this new provision, a case does not need to be remanded to the trial court in order for the defendant to obtain an order waiving, suspending, or modifying costs. Id. at ¶ 264 –265.

{¶146} Accordingly, in the case at bar, any further dispute as to costs can be handled in the manner authorized under R.C. 2947.23, without remand by this court.

{¶147} Helfrich's Fourteenth Assignment of Error is overruled.

{¶148} For all the forgoing reasons, Helfrich's Fourteen Assignments of Error are overruled and the judgment of the Licking County Municipal Court is affirmed.

By Gwin, P.J.,

Baldwin, J., and

Wise, Earle, J., concur